# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SHEILA WILDS,                     )
                                  )
            Plaintiff,            )
                                  )
    v.                            )      1:13CV318
                                  )
CAROLYN W. COLVIN,                )
Acting Commissioner of Social     )
Security,                         )
                                  )
                                  )
            Defendant.            )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Sheila Wilds, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain review of a final decision of the Commissioner of Social Security denying her claims for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. The Court has before it the certified administrative record and cross-motions for judgment.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed applications for a POD, DIB, and SSI benefits in December 2008 alleging a disability onset date of April 5, 2008. (Tr. 163, 167.)[1] The applications were denied initially and upon reconsideration. (Id. at 71-93.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Id. at 29.) Present at the

---

[1] Transcript citations refer to the administrative record.

November 2010 hearing were Plaintiff and her attorney, while a Vocational Expert ("VE") testified telephonically. (*Id.* at 43-70.) The ALJ determined that Plaintiff was not disabled under the Act. (*Id.* at 33-40.) In August 2010, the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 8-11.)

## II. FACTUAL BACKGROUND

Plaintiff was 44 years old on the alleged disability onset date, had completed tenth grade, was able to communicate in English, and had past relevant work as a housekeeper. (*Id.* at 48, 163.)

## III. STANDARD FOR REVIEW

The Commissioner held that Plaintiff was not under a disability within the meaning of the Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla" "but may be somewhat less than a preponderance." *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner must make findings of fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). The Court does not conduct a de novo review of the evidence nor of the Commissioner's findings. *Schweiker*, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Hays*, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). The issue before the Court is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See id.*; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. THE ALJ'S DISCUSSION

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under the Act as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[2] which can be expected

---

[2] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

3

to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. §§ 423(d)(1)(a), 1382c(a)(3)(A). To meet this definition, a claimant must have a severe impairment which makes it impossible to do previous work or any other substantial gainful activity[3] that exists in the national economy. 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

## A. The Five-Step Sequential Analysis

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520, 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ must determine in sequence:

(1) Whether the claimant is engaged in substantial gainful activity (*i.e.*, whether the claimant is working). If so, the claimant is not disabled and the inquiry ends.

(2) Whether the claimant has a severe impairment. If not, then the claimant is not disabled and the inquiry ends.

(3) Whether the impairment meets or equals to medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant *is* disabled and the inquiry is halted.

---

[3] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

(4) Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is not disabled and the inquiry is halted.

(5) Whether the claimant is able to perform any other work considering both her residual functional capacity[4] and her vocational abilities. If so, the claimant is not disabled.

20 C.F.R. §§ 404.1520, 416.920.

Here, the ALJ reached the fourth step of the sequence, at which point he determined that Plaintiff was not disabled from April 5, 2008 through the date of the decision. (Tr. at 39.) The ALJ first determined that Plaintiff had not engaged in substantial gainful activity at any time since her alleged onset date. (*Id.* at 35.) The ALJ next found in step two that Plaintiff had severe impairments: psoriasis, uterine fibroids, and anemia. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.* at 36.) At step four, the ALJ concluded that Plaintiff could perform her past relevant work "as a cleaner in housekeeping." (*Id.* at 39.)

### B. Residual Functional Capacity Determination

Prior to step four, the ALJ determined Plaintiff's RFC based on the ALJ's evaluation of the evidence, including Plaintiff's testimony and the findings of treating and examining

---

[4] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of her impairment and any related symptom (*e.g.*, pain). *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also Hines v Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

health care providers. (*Id.* at 36-39.) Based on the evidence as a whole, the ALJ determined that Plaintiff retained the RFC to perform light work with no contact with the public. (*Id.* at 36.) In reaching a conclusion about Plaintiff's RFC, the ALJ considered the evidence, including Plaintiff's testimony, and found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (*Id.* at 38.)

### C. Past Relevant Work

The ALJ found in step four that Plaintiff could perform her past relevant work "as a cleaner in housekeeping." (*Id.*)

## V. ANALYSIS

Plaintiff raises five issues. First, Plaintiff contends that the ALJ erred in rejecting the medical opinion of Plaintiff's treating physician. (Docket Entry 13 at 3.) Second, Plaintiff argues that the ALJ failed to properly evaluate her credibility. (*Id.* at 4.) Third, Plaintiff contends the ALJ erred by determining Plaintiff's RFC prior to evaluating her credibility. (*Id.* at 8.) Fourth, Plaintiff contends the ALJ failed to make a "function-by-function analysis." (*Id.* at 10.) Last, Plaintiff contends that the ALJ erred in failing to attribute "great weight" to Plaintiff's testimony. (*Id.* at 11.) As explained below, these arguments lack merit.

### A. The ALJ Did Not Err in Addressing Dr. Acharya's Medical Opinion.

Plaintiff contends that the ALJ erred in rejecting the medical opinion of Plaintiff's

treating physician, Dr. Acharya. (Docket Entry 13 at 3.) Dr. Acharya met with Plaintiff a number of times in 2009 and 2010. (*See, e.g.*, Tr. 235-39, 242, 253, 256, 321.) In July 2009 she wrote that Plaintiff "has some medical problems she can not work due to her medical condition" and "[a]bility to work: none." (*Id.* at 246.) The ALJ gave this opinion "little weight" (Tr. 38) because "the doctor's opinion[ ] is contrary to and unsupported by her own medical notes."[5] (*Id.* at 38.) Plaintiff essentially contends that the ALJ (1) failed "to say how much weight he gave to Dr. [Acharya's] opinion" and (2) failed to request a full medical source statement from Dr. Acharya. (Docket Entry 13 at 3.) These arguments lack merit.

First, the ALJ's decision to attribute to attribute "little weight" to Dr. Acharya's medical opinion is supported by substantial evidence. The "treating physician rule," 20 C.F.R. § 404.1527(c)(2) generally provides more weight to the opinion of a treating source, because it may "provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).[6] But not all treating sources are created equal. An ALJ refusing to accord controlling weight to the medical opinion of a treating physician must

---

[5] For this reason, Plaintiff's argument that the ALJ failed to weigh, or simply disregarded, Dr. Acharya's opinion fails. (Docket Entry 13 at 3.)

[6] SSR 96–2p provides that "Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques." SSR 96-2p, *Giving Controlling Weight to Treating Source Medical Opinions*. However, where "a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight." *Id.* SSR 96-5p provides further that "treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance." SSR 96-5p, *Medical Source Opinions on Issues Reserved to the Commissioner*. However, "opinions from any medical source about issues reserved to the Commissioner must never be ignored, and . . . the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)." *Id.*

consider various "factors" to determine how much weight to give it. *Id.* §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). These factors include: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *Id.*

Significantly, as subsections (2) through (4) of the rule describe in great detail, a treating source's opinion, like all medical opinions, must be both well-supported by medical signs and laboratory findings as well as consistent with the other substantial evidence in the case record. *Id.* §§ 404.1527(c)(2)-(4), 416.927(c)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590; *accord Mastro v. Apfel*, 270 at 178. Opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Act never receive controlling weight because the decision on that issue remains for the Commissioner alone. 20 C.F.R. §§ 404.1527(d), 416.927(d).

In light of this well-established law, the ALJ was permitted to disregard Dr. Acharya's conclusory assertion that Plaintiff was disabled. As explained, that is a determination reserved for the ALJ. Additionally, the ALJ was also permitted to find Dr. Acharya's opinion was "contrary to and unsupported by her own medical notes." (Tr. 38). This is because, as the ALJ further discussed, "[o]ther than noting [Plaintiff] appeared chronically ill and would require a blood transfusion for her bleeding, [Dr. Acharya], found [that Plaintiff's]

8

examination was essentially normal."[7] (*Id.* at 37 citing Tr. 252-53.) Dr. Acharya's notes showed that Plaintiff experienced little or no pain (Tr. 251, 254), that she was in no distress (*Id.* at 255), that her back, neck, extremities and neurological system were grossly intact (*Id.* at 252, 255), and that she had a grossly intact musculoskeletal examination (*Id.* at 255).

The ALJ also opined that Dr. Acharya's "own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled, and the doctor did not specifically address this weakness." (Tr. 38). Plaintiff calls this "conclusory" and "boilerplate," but it is an accurate assessment of the record. (Docket Entry 13 at 3.) As alluded to, Dr. Acharya's notes stated that Plaintiff was in little or no pain and in no distress. (*Id.* at 251, 253, 254, 255, 256.) Dr. Acharya's notes also showed that Plaintiff's extremities were grossly intact. (*Id.* at 252, 255).

It is also noteworthy that Plaintiff seems to agree with the conclusion that Dr. Acharya's notes do not demonstrate that Plaintiff is disabled. (Docket Entry 13 at 3, "a prudent ALJ would not have granted [her] claim on the basis of Dr. [Acharya's] brief, conclusory opinion.") Nevertheless, Plaintiff still maintains that the ALJ's decision should be reversed. First, Plaintiff argues that the ALJ should have obtained a full medical source statement from Dr. Acharya. (*Id.* at 3-4.) However, as Defendant points out, a request was made for a full medical source statement (Tr. 373) and, in fact, Dr. Acharya's opinion states

---

[7] As Defendant correctly points out, appearing chronically ill and requiring a blood transfusion is a considerable exception to an essentially normal examination. However, as Defendant is also correct to point out, several months after those findings, Plaintiff was treated for a headache, yet otherwise appeared well nourished, in no acute distress, and appeared to be in only mild discomfort. (Tr. 327). A few months after that, she was without headaches and "well appearing and in no acute distress." (*Id.* at 312).

9

that she was "providing additional information regarding [Plaintiff's] medical condition at your request." (*Id.* at 246.) As such, any failure in Dr. Acharya's records is not properly attributable to the ALJ in this case.

Plaintiff is perhaps further contending that, given Dr. Acharya's opinion, the ALJ was obliged to recontact her until he fulfilled his statutory duty to obtain a full medical source statement. Yet, the ALJ was only required to recontact Dr. Acharya if the record was inadequate to make a disability determination. *See Scarberry v. Chater*, No. 94-2000, 1995 WL 238558, at *4 n. 13 (4th Cir. 1995) (unpublished); *Hutchinson v. Astrue*, No. 1:09-cv-57, 2012 WL 1267887, at * 6 (M.D.N.C. Apr. 16, 2012); *Parker v. Astrue*, 792 F. Supp. 2d 886, 895 (E.D.N.C. 2011). That is not the case here.[8]

Here, as Defendant accurately points out, the record showed that Plaintiff was not regularly taking any prescription medication for her pain (Tr. 202, 230); that she went years without seeing a dermatologist despite suffering from psoriasis all her life (*id.* at 230); that she had a normal range of motion in her extremities (*id.* at 229); that she had 5/5 muscle strength (*id.* at 232), despite claiming that she was unable to lift 10 pounds (*id.* at 62); that she was able to do heel and toe walking, squat, and rise (*id.* at 232); and that she was able to perform dexterous hand movements with complaints of pain (*id.* at 232). Additionally, the medical evidence revealed that Plaintiff denied anything more than mild pain, and also denied stiffness, swelling, joint limitation, headaches (at times), weakness, change in gait (*id.* at 270, 298), and sensory or motor deficits (*id.* at 270, 299, 325). The record revealed further

---

[8] At the administrative hearing, Plaintiff's attorney stated to the ALJ that the record in this case was up to date. (Tr. 45.)

that Plaintiff's movements were within normal limits (*id.* at 288) and that she had good movements in all her extremities (*id.* at 327). This is substantial evidence to determine that Plaintiff was not disabled. The ALJ was not required to recontact Dr. Acharya.[9]

### B. The ALJ's Credibility Determination Is Supported by Substantial Evidence.

In Plaintiff's second and third claims, she contends that the ALJ erred in assessing her credibility. (Docket Entry 13 at 4-10.) The Fourth Circuit Court of Appeals has adopted a two-step process by which the ALJ must evaluate a claimant's symptoms. The first step requires the ALJ to determine if the plaintiff's medically documented impairments could reasonably be expected to cause plaintiff's alleged symptoms. *Craig*, 76 F.3d at 594. The second step includes an evaluation of subjective evidence, considering claimant's "statements about the intensity, persistence, and limiting effects of [claimant's] symptoms." *Id.* at 595 (citing 20 C.F.R. §§ 416.929(c)(4) and 404.1529(c)(4).) "The ALJ must consider the following: (1) a claimant's testimony and other statements concerning pain or other subjective complaints; (2) claimant's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment." *Grubby v. Astrue*, No. 1:09cv364, 2010 WL 5553677, at *3 (citing *Craig*, 76 F.3d at 595; 20 C.F.R. § 404.1529(c).) "Other evidence" refers to factors such as claimant's daily

---

[9] Additionally, an agency consultant reviewed the record and concluded that Plaintiff was capable of performing medium work, (Tr. 272-279) and the ALJ was permitted to give "some" weight to this opinion because it was consistent with the previously mentioned evidence. (Tr. 38); *see also Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) ("the testimony of a non-examining physician can be relied upon when it is consistent with the record"). Consequently, in light of this, and in light of the analysis set forth in the remainder of this Recommendation, Plaintiff's claim that the ALJ rejected all opinion evidence and made up his own is without merit. (Docket Entry 13 at 10.) Here, the ALJ properly did what he was tasked with doing.

11

activities, duration and frequency of pain, treatment other than medication received for relief of symptoms, and any other measures used to relieve claimant's alleged pain. *Id.* Moreover, SSR 96-8p requires that:

> The adjudicator must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC. Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone.

SSR 96-8p, *Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184, *5. Similarly, in determining the credibility of a claimant, SSR 96–7p, *Assessing the Credibility of an Individual's Statements*, instructs the ALJ to "consider the entire case record" and requires a credibility determination to "contain specific reasons for the finding on credibility, supported by the evidence in the case record[.]" SSR 96–7p, 1996 WL 374186, at *4. Importantly, an ALJ's credibility determination is also entitled to "substantial deference." *Sayre v. Chater*, NO. 95-3080, 1997 WL 232305, at *1 (4th Cir. May 8, 1997) (unpublished); *Salyers v. Chater*, No. 96-2030, 1997 WL 71704, at *1 (4th Cir. Feb. 20, 1997) (unpublished).[10]

Here, substantial evidence supports the ALJ's assessment of Plaintiff's credibility, including allegations of pain. In his Decision, the ALJ concluded that:

---

[10] Plaintiff contends that, as a matter of law, the ALJ should have treated her testimony as "reasonably likely" to be true because he found at step one that she had a medical condition reasonably likely to produce the pain alleged. (Docket Entry 13 at 5.) This is not the law and arguments such as this are routinely rejected. *See, e.g., Nay v. Colvin*, No. 4:13–CV–30–FL, 2014 WL 4097604, *6 (E.D.N.C. Aug. 20, 2014); *Young v. Astrue*, No. 1:09-cv-1008, 2013 WL 474787, at * 11 (M.D.N.C. Feb 7, 2013).

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

Although the claimant has described daily activities, which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Second, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.

The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. Although the claimant has received some treatment for the allegedly disabling impairments, that treatment has been essentially routine and conservative in nature. The claimant's use of medications does not suggest the presence of [ ] impairments, which are more limiting than found in this decision.

While the claimants treating physician did opine the claimant is disabled, the doctor's own report fails to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled, and the doctor did not specifically address this weakness. Opinions on the ultimate issue of disability are never entitled to controlling weight. Further, while the doctor does have a treating relationship with the claimant, the treatment history is quite brief. In addition, the residual functional capacity conclusions reached by the physicians employed by the State Disability Determination Services also supported a finding of 'not disabled.' Although those physicians were non-examining, and therefore their

opinions do not as a general matter merit as much weight as those of examining or treating physicians, those opinions do deserve some weight.

As for the opinion evidence, the undersigned has considered the state agency's residual functional assessments and finds they give fair, but not sufficient consideration to the claimant's impairments and limitations arising there from. The undersigned gives such assessments some, but not great weight.

In sum, the above residual functional capacity assessment is supported by the evidence of record as a whole. I have considered the combined effect of the above-listed severe impairments as well as the other non-severe medically determinable conditions in determining the claimant's residual functional capacity . . . . Further I have weighed all of the medical evidence and medical opinions submitted . . . . The evidence of record supports a finding of a residual functional capacity as listed above.

(Tr. 38-39.)

As noted, the ALJ "careful[ly] consider[ed]" the evidence and found that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms." (*Id.* at 38.) Thus, the ALJ performed the first step of the *Craig* analysis. Next, the ALJ performed step two of the analysis, concluding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent" with the RFC.[11] (*Id.*) In support of this conclusion, the ALJ correctly pointed

---

[11] Plaintiff contends that the ALJ erred by using this "boilerplate" statement because it implied that he determined her RFC before he assessed her credibility. (Docket Entry 13 at 8-9.) In rejecting an identical argument, the Eastern District of North Carolina explained that:

> the *Bjornson* court's critique of the template language as poorly worded was not the basis upon which it required remand. The *Bjornson* court remanded because it held that "the administrative law judge's opinion failed to build a bridge between the medical evidence

14

out that the record contained "relatively weak medical evidence" of disability. (Tr. 38.)

Next, the ALJ correctly pointed out further that Plaintiff's treatment was generally routine and conservative and that she had generally not received the medical treatment one would expect for a disabled person. (*Id.*) As mentioned, Plaintiff went years without seeing a doctor. (*Id.* at 55, 189, 230). She presented herself as being in considerable pain. (*Id.* at 60-62.) Plaintiff, however, was not receiving treatment for pain when she applied for benefits (*id.* at 201) and was not taking medication for pain aside from Tylenol and Advil (*id.* at 202). (*See also* Tr. 270, 298 (denies pain); *id.* at 301 (pain 0 out of 10).)

Also, at the time of the administrative hearing, Plaintiff was receiving conservative treatment for her arthritis and her doctors were not "giving [her] anything for it." (*Id.* at 56; *see also id.* at 57 (acknowledging that her arthritis treatment consisted of her "go[ing] and . . . report[ing] that [she had] some pain in [her] hands").) As for her anemia, Plaintiff's doctors discussed the possibility of hysterectomy for her "symptomatic uterine fibroids." (*Id.* at 347; *see also id.* at 252 (assessing Plaintiff with "anemia due to menorrhagia due to uterine fibroids").) Yet, at her hearing, Plaintiff's attorney informed the ALJ that Plaintiff had not

---

> (along with *Bjornson's* testimony, which seems to have been fully consistent with that evidence) and the conclusion that she is able to work full time in a sedentary occupation provided that she can alternate sitting and standing." Thus the ALJ's use of this language is not an error…

*Mascio v. Colvin*, No. 2:11-cv-65-FL, 2013 WL 3321577, at * 3 (E.D.N.C. July 1, 2013) (citing *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012)); *see also Kamann v. Colvin*, 721 F.3d 945, 951 (8th Cir. 2013) (rejecting an identical argument as "semantics and nothing more"). Furthermore, as the Seventh Circuit explained—and as Plaintiff acknowledges (Docket Entry 13 at 9)—"the inclusion of this language can be harmless . . . [i]f the ALJ has otherwise explained his conclusion adequately." *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012). As discussed above, the ALJ adequately explained the credibility determination.

received a hysterectomy. (*Id.* at 45; *see also id.* at 230 (Plaintiff "has a history of heavy menstruation, but she has not checked with the gynecologist").)

Additionally, as noted, Dr. Acharya concluded that Plaintiff could not work. However, the ALJ correctly concluded that opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Act never receive controlling weight because the decision on that issue remains for the Commissioner alone. 20 C.F.R. § 404.1527(d). And, as explained earlier, Dr. Acharya's opinion was properly discounted by the ALJ. For all these reasons, the ALJ's credibility analysis is supported by substantial evidence.

Plaintiff's arguments to the contrary—which largely rely on unpublished, out-of-circuit case law, much of which is factually distinct from this case—do not demonstrate otherwise. Plaintiff points to the ALJ's discussion of her activities of daily living. (Docket Entry 13 at 5 citing Tr. 38.) The ALJ acknowledged that Plaintiff testified that they were limited (Tr. 38 referencing 63-67), but concluded that her statements did not support her disability claim because her daily activities could not "be objectively verified with any reasonable degree of certainty." (Tr. 38.) Plaintiff contends that this was inappropriate (Docket Entry 13 at 5-7), and Defendant concedes "she is probably right" but that the "ALJ reached the right result by the wrong route" (Docket Entry 17 at 13.) However, even assuming error on the part of the ALJ, as discussed above, the ALJ still presented several other valid reasons firmly grounded in the record by ample evidence for finding Plaintiff's

16

subjective complaints partially incredible. Any error here was at most harmless.[12]

## C. The ALJ Did Not Err in Assessing Plaintiff's Work Related Limitations.

Plaintiff next challenges the RFC assessment by contending that the ALJ erred by failing to make a function-by-function analysis of Plaintiff's abilities as required by Social Security Ruling 96-8p. (Docket Entry 13 at 10-11.) This argument is unpersuasive. "Plaintiff appears to be arguing that the Ruling requires an ALJ to articulate in his opinion an assessment of a claimant's ability in each of the functional categories, but there is a distinction between what the ALJ must *consider* and what he must *articulate* in the decision." *Joyce v. Astrue*, No. 1:06CV27, 2009 WL 313345, at *14 (M.D.N.C. Feb. 5, 2009) (unpublished). An ALJ is not required to discuss all of a claimant's abilities on a function-by-function basis but, rather, only to describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.* (citation omitted); *see also Brubaker v. Astrue*, No. 3:12-cv-423-REP, 2012 WL 6493606, at *9 (E.D. Va. Nov. 21, 2012) (unpublished) *adopted by* 2012 WL 6541094 (E.D. Va. Dec. 12, 2012); *Meadows v. Astrue*, No. 5:11cv00063, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (unpublished) (same) *adopted by* 2012 WL 4005455 (W.D. Va. Sept. 12, 2012).

Here, the ALJ adequately explained his RFC determination in narrative form in compliance with SSR 96-8p. The ALJ evaluated Plaintiff's treatment history, her (limited)

---

[12] *See, e.g., Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994); *Frank v. Barnhart*, 326 F.3d 618, 621–22 (5th Cir. 2003); *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008); *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012); *Blackwell v. Colvin*, No. 1:14-cv-00085-MOC, 2014 WL 7339132, *6 (W.D.N.C. Dec. 23, 2014); *Tomassetti v. Astrue*, No. 7:11-CV-88-D, 2012 WL 4321646, at *11 (E.D.N.C. 22 Aug. 2012) *adopted by* 2012 WL 4321632 (E.D.N.C. Sep 20, 2012); *Hosey v. Astrue*, No. 2:11-cv42, 2012 WL 667813, at *7 (W.D.N. C. Feb. 6, 2012) *adopted by* 2012 WL 665098 (N.D.W.Va. Feb 28, 2012).

medications and treatment, her credibility, and the opinion evidence. (Tr. 37-38.) This fully satisfied the requirements of SSR 96-8p. The ALJ then limited Plaintiff to light work and no contact with the public secondary to her psoriasis. (*Id.* at 36.)

Additionally, Plaintiff has failed to demonstrate any likelihood of prejudice, even assuming the ALJ erred in his analysis, because Plaintiff fails to point to any specific evidence that the ALJ failed to consider and which might have established the presence of an additional limitation. *See, e.g., Weaver v. Astrue*, Civil No. 3:10-CV-00568-GCM-DCK, 2011 WL 4596122, *11 (W.D.N.C. Aug. 10, 2011) (unpublished) *adopted by* 2011 WL 4596449 (Sept. 30, 2011). Instead, Plaintiff contends that "[f]or all the court knows, the ALJ himself does not know whether the claimant can lift 5 pounds or 50, because he has said nothing on the subject . . . ." (Docket Entry 13 at 11.) This is false. As noted, the ALJ considered all the evidence of record and found that Plaintiff could perform "light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b)." (Tr. 36.) Light work, in pertinent part, is defined as lifting no more than 20 pounds at a time with frequently lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b).

Moreover, the ALJ gave weight to the opinion of the non-examining state agency physician (Tr. 38), who assessed Plaintiff's work related limitations on a function by function basis (*Id.* at 273-79). The ALJ was not required to repeat these findings verbatim. *See, e.g., Lind v. Astrue*, 370 Fed. App'x 814, 817 (9th Cir. 2010).[13] For all these reasons, Plaintiff's

---

[13] Moreover, even assuming error here, any error is harmless for an additional reason. "Failure to articulate a function-by-function analysis is harmless error where the ALJ's ultimate finding is supported by substantial evidence in the record." *Broussard v. Colvin*, No. 5:21-CV-398–FL, 2013 WL

18

argument fails.

### D. The ALJ Corrects Assessed Plaintiff's Testimony.

Last, in a final contention overlapping Plaintiff's second and third allegations of error, Plaintiff claims that the ALJ was required to give "great weight" to her testimony because there was "more than a scintilla of evidence" in support of her allegations. (Docket Entry 13 at 11–12.) In support, Plaintiff cites *Smith v. Astrue*, No. 11–1574, 457 F. App'x 326 (4th Cir. 2011). (*Id.*) However, arguments such as this have been routinely rejected. For example, in *Lusk v. Astrue*, the United States District Court for the Western District of North Carolina reasoned that:

> The Plaintiff nevertheless argues that his subjective complaints are entitled to "great weight" at the second step of the credibility assessment because there is objective evidence in the record to support a positive finding at step one of the *Craig* [analysis]. In support of this argument, the Plaintiff cites to the Fourth Circuit's recent holdings in *Smith v. Astrue*, 457 F. App'x 326 (4th Cir. 2011), and *Felton–Miller v. Astrue*, 459 F. App'x 226 (4th Cir.2011). Plaintiff's argument, however, is misplaced. The Fourth Circuit has affirmatively rejected the idea that *Craig* creates any kind of "great weight" rule. *See Smith*, 457 F. App'x at 329 ("*Craig* does not create or recognize a great weight rule affording the claimant a presumption of credibility at step two of the pain analysis based on a successful showing at step one."); *accord Felton-Miller*, 459 F. App'x at 229 n. 1. In short, there is simply no legal support for Plaintiff's argument that the ALJ erred in failing to afford great weight to his subjective complaints when assessing his credibility.

---

5370592, at *3 (E.D.N.C. Sept.24, 2013) (quoting *Mascio v. Colvin*, No. 2:11-CV-65-FL, 2013 WL 3321577, at *3 (E.D.N.C. July 1, 2013)). As explained herein, the ALJ's RFC determination is supported by substantial evidence.

No. 1:11-cv-00196-MR, 2013 WL 498797, at * 7 (W.D.N.C. Feb 11, 2013).[14] As explained in detail above, the ALJ's credibility analysis is supported by substantial—in fact, ample—evidence. The ALJ complied with both steps of *Craig*, articulated reasons grounded in the record for finding that Plaintiff's allegations were not entirely credible, and set forth a credibility analysis susceptible to judicial review. Consequently, this argument also fails.

## VI. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 12) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 16) be **GRANTED**, and the final decision of the Commissioner be upheld.

_____
Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
January 23, 2015

---

[14] *See, e.g., Young*, 2013 WL 474787, at * 11; *Reynolds v. Astrue*, No. 3-11-cv-49, 2012 WL 748668, at * 6-7 (W.D.N.C. Mar. 8, 2012); *Marshall v. Astrue*, No. 5:10-cv-00255-D, 2012 WL 707067, at * 10-12 (E.D.N.C. Jan. 31, 2012).